

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 2, 1947

Hon. R. E. Schneider, Jr.      Opinion No. V-443
County Attorney
Live Oak County      Re: Qualifications requir-
George West, Texas             ed of petitioners for
                                a Commissioners' Court
                                order to create, alter,
                                or discontinue a coun-
                                ty road.

Dear Sir:

        Your request, asking for an interpretation of provisions in Article 6705 of the Revised Civil Statutes of Texas, reads in part:

        "The specific question involved is wheth-
er or not non-residents of the county who are
owners of a fee interest in real estate in the
road precinct are qualified petitioners."

        Article 6705 provides as follows:

        "The Commissioners Court shall in no in-
stance grant an order on an application for
any new road, or to discontinue an original
one, or to alter or change the course of a
public road, unless the applicants have giv-
en at least twenty days notice by written ad-
vertisement of their intended application,
posted up at the court house door of the coun-
ty and at two other public places in the vicin-
ity of the route of such road. All such appli-
cations shall be by petition to the Commission-
ers Court, <u>signed by at least eight freeholders</u>
<u>in the precinct in which such road is desired</u>
<u>to be made or discontinued</u>, specifying in such
petition the beginning and termination of such
road, provided <u>an application to alter or change</u>
<u>a road need not be signed by more than one free-</u>
<u>holder of the precinct.</u>"  (Emphasis added throughout)

        We quote the following from Rex V. Johnson, 5
N. H. 520, 22 Am. Dec. 472:

"The next question to be determined is whether anything passed by the extent. The objection urged against it is, that it does not appear by the return that the appraisers had the qualifications which the statute requires. It has been decided that an appraiser must have a freehold and be a resident in the county where the land to be appraised lies; and a return that the appraisers were 'freeholders in the county' was held not sufficient, because there was nothing in the terms which imported that they were residents in the county. Simpson v. Coe, 3 N.H. 85. We have attentively considered the language of the return in this case, and are unable to perceive any substantial difference between the meaning of the words 'freeholders of a county', and 'freeholders in a county'. It does not seem to us that to be a freeholder of a county by any means necessarily imports anything more than to be a holder of real estate situate there. In the statute of February 8, 1791 prescribing the qualifications of town officers, it was provided that overseers of the poor should be 'freeholders and inhabitants of the town'. Here it seems not to have been deemed enough to declare that they should be freeholders of the town, but the word 'inhabitants' is added; and we have no doubt that a man who owns real estate in a county, may, with strict propriety of language, be said to be a freeholder of that county, although he may not reside in it. We are therefore of opinion that the term 'freeholders of said county' do not import residents in the county."

In Matthews v. People, 42 N. E. 864, 159 Ill. 399, it is said that:

"Recurring to the statute, it declares: 'No person shall be licensed to keep a dramshop . . . . by the authorities of any city, town or village unless he shall give bond in the penal sum of $3000, . . . . with at least two good and sufficient sureties, freeholders of the county in which the license is to be granted, to be approved by the officer who may be authorized to issue the license.'. . . . In

the construction of a statute it is always important to ascertain the intent of the legislature and then carry out that intention. But the intention of the legislature is to be determined from the language used in the act, and where the words used are plain and easily understood, and there is no ambiguity, there is no room for construction. . . . If the legislature, in the passage of the act, had intended to require the sureties on the bonds to be freeholders residing in the county, why did not that body say so. The fact that no such language was used is the best evidence that no intention of that character existed. . . . But, however that may be, it is enough that the statute here involved does not, by a fair and reasonable construction, require the sureties to reside in the same county where the incorporated town or village granting the license is located, and courts are powerless to add a requirement not found in the statute."

It is our opinion that, insofar as any residence requirement is concerned, "freeholders in the precinct" and "freeholders of the precinct" must be given the same meaning. We have concluded that such terms, within themselves, do not imply that a freeholder must be a resident of the precinct. Under the provisions of Article 6705, non-resident freeholders, having a fee interest in real estate in the road precinct, are qualified petitioners.

### SUMMARY

"Freeholders in the precinct" and "freeholders of the precinct" must be given the same meaning insofar as a requirement of residence is concerned in qualifications required of petitioners for a Commissioners' Court order to create, alter or discontinue a county road. Such terms, within themselves, do not imply that a freeholder must be a resident of the precinct. Under the provisions of Article

6705, V.C.S., non-resident freeholders having a fee interest in real estate in the precinct are qualified petitioners.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Clyde B. Kennelly
Assistant


APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL

CBK:mw:jrb